BERGER et al. v. PACIFIC MUT. LIFE INS. CO. OF CALIFORNIA.

(Circuit Court, W. D. Missouri, W. D. June 13, 1898.)

ACCIDENT INSURANCE—SHOOTING BY INSANE PERSON.
> An exception in an accident policy of "intentional injuries inflicted by the insured or any other person" does not include death from being shot by an insane person without capacity to form an intention to inflict such injuries, or to understand the nature and quality of his act.

This was an action at law by Emma Berger and others against the Pacific Mutual Life Insurance Company of California to recover on a policy of accident insurance.

New & Palmer and Karnes, Holmes & Krauthoff, for plaintiffs. Trimble & Braley, for defendant.

PHILIPS, District Judge. The defendant has demurred to the petition herein, raising the principal question as to whether or not the defendant is liable on the policy of insurance sued upon for the

death of Lyman A. Berger, caused by a gun or pistol shot fired by one John Schlegel, alleged to have been at the time of firing "a person of insane mind, and then and there without sufficient capacity to form and have an intention to inflict such injuries, or to understand the nature and quality of his act," by which act a violent and accidental injury was inflicted upon said Lyman A. Berger, occasioning his death. The policy in question is what is known as an "accident policy." Among its provisions is the following, in substance: This insurance does not cover, and the company will not be liable for, injury or death caused by, resulting from, or attributable, partially or wholly, to "intentional injuries inflicted by the insured or any other person." The federal authorities are quite agreed that if the death is caused by the voluntary act of the assured, when his reasoning faculties were so far impaired that he was not able to understand the moral character, or the general nature, consequences, and effect, of the act he was about to commit, such death is not "intentional," within the meaning of that term as employed in the policy, and the insurer is liable. This, for the very obvious reason that the term "intentional" implies the exercise of the reasoning faculty, consciousness, and volition; and, when the injury is thus inflicted by such a person, it is accidental, resulting from external, violent cause, within the meaning of an accident policy. Insurance Co. v. Terry, 15 Wall. 591; Insurance Co. v. Rodel, 95 U. S. 232; Insurance Co. v. Broughton, 109 U. S. 121, 3 Sup. Ct. 99; Insurance Co. v. Crandal, 120 U. S. 527, 7 Sup. Ct. 685. If this be so as to a self-inflicted injury by the insured, I am not able to perceive any escape from the proposition that the same rule should be applied to the injury inflicted by "other person." The word "intentional" qualifies as much the act of the other person as it does the injury inflicted by the insured; and on the rule of construction, a sociis nocitur, the same meaning and construction must be given to the word "intentional" when applied to the act of the other person as when applied to the self-inflicted injury by the insured. If an injury inflicted on one's self while insane is not intentionally done, because of the mental incapacity of the party to perform an intentional act, it would seem that it must follow logically that an injury inflicted by another party, when such other party was insane, was not intentionally done. Where the term "intentional" is employed in the same clause and connection, it qualifies the act both of the insured and the act of "any other person."

It does seem to me that an argument may be drawn in favor of this conclusion by reference to the immediately preceding part of this same paragraph in the policy. It exempts the insurance company from all responsibility resulting from suicide, whether committed by the insured when sane or insane. Technically speaking, it is a legal solecism to speak of suicide committed by an insane person, as the term "suicide" implies the willful and voluntary act of a person who understands the physical nature of the act, and intends by it to accomplish the result of self-destruction. It is a deliberate termination of one's existence, while in the possession and enjoyment of his mental faculties, and therefore the books say that self-killing

by au insane person is not suicide.    Breasted v. Trust Co., 4 Hill, 73; Id., 8 N. Y. 299; Nimick v. Insurance Co., Fed. Cas. No. 10,266. But doubtless the courts would say in respect of a policy of insurance which in express terms exempts the insurer from liability resulting from suicide, sane or insane, that the clear purpose was to include death by the act or hand of the insured, whether he was sane or insane at the time.    The inference, however, to be drawn from this provision is that, when the insurance company intended to exempt itself from liability for an injury or death resulting from an act committed by the party when insane, it is expressly so declared; and therefore when, in the same connection, it only exempted itself from liability for death resulting from an intentional injury inflicted either by the insured or any other person, without the qualification of "sane or insane," the conclusion follows that such exception was not in the mind of the insurer; and on the well-established rule of construction, applied by the courts to contracts of insurance companies, that the terms be construed in favor of the insured rather than in favor of the insurer, it results that the demurrer should be overruled, which is accordingly done.